HARRIS v. McCASLAN.

1. A school building and lot of land, covered by a mortgage to secure the payment of 75 outstanding bonds (60 held by H and 15 by K), was purchased by two teachers, M and R, who also gave their mortgage for the purchase money, and guaranteed the payment of these bonds. Afterwards, for value, K assigned 8 of his bonds to Mrs. M. and Mrs. R., and H, for value, assigned to these same ladies 19 of his bonds, which were thereupon returned to H on deposit, in consideration of further indulgence, as collateral security for the payment of his remaining 41. The money paid for Mrs. M. was her separate property. After that H assigned these 41 bonds to plaintiff, his daughter. *Held,* that as to plaintiff, these bonds of Mrs. M. and Mrs. R. were not discharged, but stood upon the same footing as the 41 held by her.

2. A mortgagee in possession may rightfully apply the profits of the mort-

gaged premises to a debt due by him to his wife for money of hers borrowed by him.

3. Delivery of bonds to an acknowledged agent is delivery to the principal.

4. The deposit of bonds by Mrs. M. and Mrs. R. (in 1885 and 1886) as collateral security for other bonds due by their husbands was not binding upon their separate estate, they being married women and the deposit being a contract of suretyship.

Before WALLACE, J., Pickens, July, 1888.

The opinion states the case, but the receipts referred to in the 4th exception are here set out in full.   They were as follows:

"Received of S. L. McCaslan and Anna Riley the following Pickens Institute bonds, which have been purchased by them as collateral security for the purchase money of others of the same kind of bonds which they have agreed to purchase, and which I now hold, to wit: series A, Nos. 1, 6, 11, 16, and series E, No. 5, dated February 6th, 1883.   Series A, due February 6th, 1884, and series E, due February 6, 1888; and also of series A, Nos. 21, 26, 31, 36, 41, 46, and 51, dated 6th of February, 1883, due on the 24th day of March, 1883, making twelve bonds in all, and each for the sum of twenty dollars.

        "(Signed)      C. L. HOLLINGSWORTH.
"April 13th, 1885."

"Received of S. L. McCaslan, assignee, as collateral security for the payment of other bonds of the same kind, the following bonds, made by the Pickens Institute Joint Stock Company, to wit: of series B, of which four were due on the 6th of February, 1885, with interest from the 6th of February, 1883, and three were due on the 24th of March, 1885, with interest from the 24th of March, 1883, and each given for the sum of twenty dollars.    (Signed)      C. L. HOLLINGSWORTH.
"April 2, 1886."

*Messrs. Keith & Hollingsworth*, for appellant.

*Mr. James P. Carey*, for Mrs. McCaslan.

*Mr. J. E. Boggs*, for Mrs. Riley.

October 17, 1889.   The opinion of the court was delivered by

MR. JUSTICE McGOWAN. In the year 1882, for the purpose of promoting the cause of education, a number of citizens formed themselves into a joint stock company known as the "Pickens Institute Joint Stock Company." They bought a four-acre lot and erected on it an academy. The stock subscribed being insufficient for the purpose in view, the company borrowed $1,500 by issuing 75 bonds, each in the sum of $20, all secured by a mortgage of the property of the company. Of the bonds, 60 were purchased by C. L. Hollingsworth, and 15 by James K. Kirksey. The bonds were in five series, A, B, C, D, and E, payable at different times.

In April, 1883, Wm. M. McCaslan and John R. Riley, teachers, purchased the Institute property, with its good will, privileges, &c., agreeing to become responsible for the bonds, and to guarantee the stock with interest in ten years; and to secure this agreement, they mortgaged all the property, real and personal, conveyed to them. Copies of the agreement and mortgage are set out in the Brief. The purchasers opened a school in the Institute building, and continued to teach for upwards of five years, when McCaslan left, for the reason, as he stated, that the school was not sufficiently patronized to meet family expenses and pay the academy debt.

This brought on a crisis. C. L. Hollingsworth, the principal bond holder, assigned 41 of his bonds to his daughter, A. R. Harris, the plaintiff, and she instituted this action against McCaslan and Riley, the purchasers, to recover judgment for the said 41 bonds, and to foreclose the mortgage on the property. Pending the action, the interest of the mortgagors was sold subject to the mortgage, and purchased by a number of citizens. Mrs. S. L. McCaslan, wife of Wm. M. McCaslan, Mrs. Anna Riley, wife of J. R. Riley, and James K. Kirksey claimed to be the owners of certain unpaid bonds, and they also were made parties defendant.

It was referred to J. J. Lewis, Esq., as special referee, to take the testimony and report his conclusions thereon. He reported that the plaintiff, as assignee of C. L. Hollingsworth, was entitled to 41 bonds, amounting to $1,217.39, with interest. And that James K. Kirksey was entitled to be paid 7 bonds, subject to a credit "for tuition, &c." To this extent the report was not

objected to, and was confirmed without appeal.    But as to the remaining bonds (27 in number), it was contended that they had been paid and discharged, and no longer constituted subsisting obligations of the purchaser and covered by the mortgage.    This was the only question in the case.

The following facts were found and reported by the referee. Of the 15 bonds originally taken by Kirksey, he, on March 2, 1885, assigned, for value received, to Mrs. S. L. McCaslan two bonds ; on July 1, 1886, three bonds ; and on January 1, 1887, two bonds, making seven ; and on March 2, 1885, he assigned for value to Mrs. Anna Riley one bond, making in the aggregate 8 bonds.    Of the 60 bonds originally taken by C. L. Hollingsworth, he assigned for value to the defendant, Mrs. S. L. McCaslan 13, and to the defendant, Mrs. Anna Riley, 6 bonds.    That neither of the said assignees was present at the time of the assignment of the last batch by Hollingsworth, but Mrs. S. L. McCaslan was represented by her husband, Wm. M. McCaslan, who informed Hollingsworth that he was acting for his wife, and asked him if it was necessary for her to be present.

That the last batch of bonds assigned by Hollingsworth were "deposited by the said S. L. McCaslan with Hollingsworth as collateral to secure a debt owing the said H. by the said Wm. M. McCaslan, in consideration that the said H. would not forthwith foreclose his mortgage on the said W. M. McCaslan.    That the defendant, S. L. McCaslan, owned a tract of land in Abbeville County, and rented out the same for more than $60 a year for the years 1883, 1884, and 1885 ; and in the fall of 1885 sold the said tract of land for $760 and loaned the money to her husband, W. M. McCaslan, under the agreement that the proceeds arising from the management of the Piedmont Institute by them (she was a teacher in the Institute) should be applied, as they accrued, in payment thereof, and the consideration of the bonds assigned to the said S. L. McCaslan was the proceeds arising from the teaching in the Piedmont Institute."

Upon this proof, the referee held that the 20 bonds assigned to Mrs. McCaslan, and the 7 bonds assigned to Mrs. Riley, were never paid and discharged, but were purchased and assigned by Kirksey and Hollingsworth, and were still living obligations of

the purchasers and secured by the mortgage. Upon exceptions to this report, Judge Wallace confirmed it and made it the judgment of the court. And from this decree the plaintiff appeals upon the following exceptions:

"I. Because his honor erred in not holding that the 27 bonds, described in paragraphs 7, 10, and 17 of the complaint, as assigned by C. L. Hollingsworth and J. K. Kirksey to S. L. McCaslan and Anna Riley *were paid,* and should have decreed that they be cancelled.

"II. Because if said notes were in fact *paid,* his honor erred in holding that the 19 notes described in the complaint as assigned by C. L. Hollingsworth to Mrs. S. L. McCaslan and Mrs. Anna Riley should be paid to the assignees *pro rata* with the notes held by the plaintiff; when he should have held that the assigned notes were never delivered to the assignees, but were left in the hands of the assignor as collateral security for the payment of the 41 notes, now held by the plaintiff, and that the assignments to Mrs. S. L. McCaslan and Anna Riley *postponed* said notes to the payment in full of the notes held by plaintiff.

"III. Because the referee, having found as matter of fact that the 19 assigned notes above mentioned were paid from accounts for tuition due W. M. McCaslan and J. R. Riley, and collected by Hollingsworth to be applied to the payment of bonds secured by the mortgage, his honor erred in holding that the payment, assignment, and deposit of the 19 bonds by McCaslan and Riley, all simultaneous acts, conferred on the assignees a property in the bonds, which as married women they could hold against the right of plaintiff, to have her bonds *first* paid from the mortgaged property.

"IV. Because, if we admit the 19 assigned bonds, held by the plaintiff as collateral, were regularly paid and given by W. M. McCaslan and J. R. Riley to their respective wives, and thereby became their separate property, then under the terms of such purchase as shown by the receipts given (see receipts in Brief), they dealt with them as their separate property, and had the right to pledge and did pledge them as collateral security with C. L. Hollingsworth for the purchase of the 41 bonds of like kind now held by plaintiff, and his honor should have held that

the separate proceeds of such of the mortgaged property, applicable to the 19 bonds held by plaintiff as assignee of C. L. Hollingsworth, should be first applied to the payment of the 41 bonds held by plaintiff, till they were paid in full, and that the remainder, if any, should be paid to Mrs. S. L. McCaslan and Mrs. Anna Riley, according to their respective interests in the 19 bonds.

"V. Because his honor erred in holding that the 19 bonds held by plaintiff as collateral security for the payment of the 41 bonds due to plaintiff was a pledge by Mrs. S. L. McCaslan and Mrs. Anna Riley to pay the debt of their husbands, W. M. McCaslan and J. R. Riley, when, under the terms of the transaction as shown by the receipts, they were pledged for *the purchase* of the bonds held by plaintiff for the benefit of the pledgers who would own the property mortgaged after the mortgage debt was paid.

"VI. Because his honor should have held the 19 bonds as not delivered, but to be delivered only on the condition and subject to the payment of the bonds of plaintiff, and until then no property in them passed to Mrs. S. L. McCaslan and Anna Riley."

Exception 1 complains that his honor erred in holding, as a matter of fact, that the 27 bonds assigned by Kirksey and Hollingsworth to Mrs. McCaslan and Mrs. Riley *were paid and should have been cancelled.* The referee found that they were not *discharged*, and the Circuit Judge concurred in that finding. It is not denied that the assignors received value and made the assignment, but the contention of the plaintiff is, that they were paid out of the proceeds of the Institute, and therefore the transaction necessarily operated as a *satisfaction pro tanto* of the mortgage debt. The debtors make no such defence, nor do any of the bondholders except the plaintiff, Mrs. Harris, who claims that the assigned bonds are *discharged*—thus enhancing the value of the security, by diminishing the debt secured. The plantiff, herself being the assignee of her father (C. L. Hollingsworth), has no higher rights than he had, and the case must be regarded as a contest between the original parties. *Moffatt* v. *Hardin*, 22 S. C., 9.

It appeared that Mrs. McCaslan had a separate estate, and that her husband owed her money. The proceeds of the Insti-

tute were the unencumbered property of her husband, which he might use in the payment of any of his debts—certainly until the mortgage was foreclosed. The assignments themselves were declarations of title in the assignees, and wholly inconsistent with the claim now made, that the bonds were *discharged* by the debtors. Besides, as it seems to us, the "deposit" of the 19 bonds assigned by Hollingsworth as collateral for another debt, affords evidence that the parties did not regard the assigned bonds as *discharged*, but still as living valuable obligations.

Exceptions 2, 3, and 6 complain that Mrs. S. L. McCaslan never acquired property in the bonds assigned to her by Hollingsworth, for the reason that they were not actually delivered to her, but were left in the hands of the assignor (Hollingsworth) as collateral security for the 41 bonds now held and owned by the plaintiff; and if they were good obligations, should at least have been postponed in payment to the said 41 bonds. At the time the money was paid and the bonds assigned, W. M. McCaslan informed Hollingsworth that he was acting as agent for his wife, and he (H.) dispensed with her personal presence. Delivery to her acknowledged agent was delivery to her. The title passed when the money was paid by W. M. McCaslan as agent and the assignments were executed. *Pregnall & Bro.* v. *Miller & Kelly*, 21 S. C., 355. We do not see how the bonds could be "*deposited*," unless the title had *first* passed to the assignees.

Exceptions 4 and 5 make the further point, as we understand it, that if the property in those bonds did pass by the assignment to Mrs. McCaslan, she dealt with them as her separate property and pledged them to Hollingsworth, the assignor, as collateral security for the purchase of other bonds of the same kind. This is somewhat obscure, but we suppose the purpose was to contest the finding of the referee, which was in these words (the ninth finding of fact): "That the bonds assigned to the defendant, S. L. McCaslan, by the said C. L. Hollingsworth, were deposited with him by the said S. L. McCaslan as collateral to secure a debt owing the said Hollingsworth by the defendant, W. M. Mc-Caslan, in *consideration* that the said Hollingsworth would not *forthwith* foreclose his mortgage on the said W. M. McCaslan." In this finding the judge concurred. From this it is not very

clear that anything more was intended than to protect her husband from an *immediate foreclosure* upon the Institute of bonds still undisposed of by Hollingsworth. There is certainly no evidence that Mrs. McCaslan agreed to *purchase* other bonds.

But assuming that the purpose was to "deposit" the bonds as collateral security for the remaining Institute bonds held by Hollingsworth, that was the debt of her husband, W. M. McCaslan and J. R. Riley. The transaction took place in April of the years 1885 and 1886, after the amendment of the law in 1882, limiting the right of a married woman to contract "*as to her separate estate ;*" and this court has repeatedly held that under the operation of said amendment a married woman's contract for *suretyship* is beyond the powers conferred upon her and void. See *Aultman & Taylor Co.* v. *Rush*, 26 S. C., 517; *Gwynn* v. *Gwynn*, 27 *Id.*, 525; *Gerald* v. *Gerald*, 28 *Id.*, 442.

The judgment of this court is, that the judgment of the Circuit Court be affirmed.